**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



**UNITED STATES OF AMERICA**

**v.**

Civil No. 2:11cv462
Criminal No. 2:10cr96

**ANGELO GALLOWAY,**

Petitioner.

## OPINION AND ORDER

This matter is before the Court on petitioner Angelo Galloway's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. Petitioner's § 2255 motion alleges violations of his constitutional rights associated with his counsel's performance, the government's actions, and the sentence imposed by the Court. In addition to such motion, Petitioner has filed countless letters and motions seeking various relief, many of which seek an order granting Petitioner "immediate release." After reviewing the briefs and case file, the Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to relief. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(a). For the reasons discussed below, Petitioner's § 2255 motion is **DISMISSED and DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Criminal Charges and Appointment of Counsel

Petitioner was first charged in this case by "criminal information" and, as communicated to the Court, had initially decided to waive indictment and enter a plea of guilty. On June 7, 2010, Petitioner appeared before the Court, with appointed counsel, for a guilty plea hearing. However, at such hearing, Petitioner decided not to enter a plea of guilty—a decision he had every right to make. Two days later, at the request of the parties, the Court conducted a second guilty plea hearing. At such hearing, Petitioner again opted not to enter a plea of guilty, and instead requested that new counsel be appointed to represent him in his criminal case. Although the facts supporting such request suggested that Petitioner's true motivation was to obtain a "second opinion" from a different lawyer, the Court gave Petitioner the benefit of the doubt, and out of an abundance of caution, granted Petitioner's request for the appointment of new counsel. New counsel was therefore appointed.

In light of Petitioner's decision to reverse course at both of the previously scheduled guilty plea hearings, the government pursued an indictment against Petitioner. On June 10, 2010, the grand jury returned a multi-count indictment charging Petitioner with more than twenty drug trafficking counts and one count of

2

possession of a firearm in furtherance of drug trafficking. ECF No. 18.

## B. Guilty Plea, Sentencing and Appeal

On July 22, 2010, Petitioner appeared before the Court, with his newly appointed attorney, and at the conclusion of a detailed Rule 11 plea hearing, entered a plea of guilty to one count of the indictment. Based on the detailed colloquy and Petitioner's admission of guilt, the Court found Petitioner guilty of Count One: Conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of cocaine and fifty (50) grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). The punishment for such offense was a mandatory minimum term of imprisonment of ten (10) years, and a maximum term of life imprisonment. In entering a plea of guilty to Count One, Petitioner avoided the possibility of a conviction on the firearm count, which carried with it a mandatory minimum term of five (5) years imprisonment, and a maximum of life, to be served consecutively to any sentence imposed on the drug trafficking count(s).

Approximately two weeks after Petitioner entered his plea of guilty to Count One of the indictment, Petitioner filed a letter-motion, without the assistance of his attorney, and indicated therein that his plea of guilty was not made voluntarily, and that his current counsel had provided

3

ineffective assistance.  ECF No. 30.  The Court construed such filing, and two associated letters, ECF Nos. 36, 37, as a motion to withdraw the plea of guilty and a motion for the appointment of new counsel.

On August 24, 2010, the Court conducted a hearing on the pending motions, and after appropriate inquiry, denied Petitioner's motion seeking the appointment of new counsel.  At the same hearing, Petitioner orally withdrew his motion to withdraw his guilty plea, and the case was continued for sentencing.  However, prior to sentencing, Petitioner again filed several pro se motions and letters in which he renewed his request that he be permitted to withdraw his guilty plea. Accordingly, on March 15, 2011, the Court conducted another detailed hearing addressing the numerous pending filings that had been submitted by Petitioner.  At the conclusion of such hearing, the Court denied all of Petitioner's pending pro se motions.

After the March hearing, but prior to sentencing, Petitioner filed yet another motion seeking to withdraw his guilty plea.  ECF No. 69.  On April 12, 2011, such repetitive motion was denied by the Court through a docket order.  ECF No. 71.

On May 23, 2011, Petitioner appeared before the Court, with counsel, for sentencing.  However, as a result of new evidence

4

presented by the government at the sentencing hearing, the Court granted defense counsel's unopposed oral motion for a continuance of the sentencing hearing.

On June 14, 2011, the sentencing hearing was resumed. At the outset of such hearing, Petitioner's advisory Guideline range was calculated to be 262-327 months imprisonment. After ruling on defense counsel's remaining objections to the Guideline calculation, the Court reduced the advisory Guideline range to 235-293 months. Notably, notwithstanding Petitioner's numerous motions and letters challenging his guilt and his guilty plea, conduct that plainly could have been considered "inconsistent" with acceptance of responsibility, Petitioner's Guideline calculation included a 2-level credit for acceptance of responsibility. U.S.S.G. § 3E1.1(a). At the conclusion of the hearing, Petitioner was sentenced to 240 months imprisonment, a sentence that fell near the low-end of the downwardly adjusted advisory Guideline range, but that the Court determined was sufficient-though not greater than necessary-to accomplish the purposes of the statutory sentencing factors.

On June 15, 2011, Petitioner timely filed his notice of appeal to the United States Court of Appeals for the Fourth Circuit. Such appeal argued that this Court erred by denying Petitioner's motion to withdraw his guilty plea, which had been predicated on defense counsel's purported conflict of interest.

On April 17, 2012, the Fourth Circuit issued an opinion that addressed the merits of Petitioner's appeal and affirmed this Court's ruling denying Petitioner's motion to withdraw his plea based on his counsel's purported conflict of interest. United States v. Galloway, 471 F. App'x 139 (4th Cir. 2012).

## C. 28 U.S.C. § 2255 Motion

On August 17, 2011, just two months after Petitioner was sentenced by this Court, and while his direct appeal was still in its infancy, Petitioner filed his habeas motion pursuant to 28 U.S.C. § 2255. ECF No. 104. Such filing was submitted almost a year early because Petitioner's conviction and sentence was not final until: (1) the United States Court of Appeals for the Fourth Circuit ruled on Petitioner's direct appeal; and (2) Petitioner's time expired for filing a petition for writ of certiorari with the United States Supreme Court. This Court however, opted not to dismiss such motion as a premature filing because Petitioner opposed its dismissal. ECF No. 106, 107.

After Petitioner's conviction and sentence became final in the summer of 2012, Petitioner submitted a filing to this Court requesting that his previously filed § 2255 motion "be acted upon." ECF No. 171. Because Petitioner did not seek to add any additional claims after his conviction became final, but instead expressly requested that his previously filed and clearly delineated § 2255 motion be ruled upon, the Court construed the

6

previously filed motion (ECF No. 104) to be Petitioner's operative § 2255 motion. As a result, on November 1, 2012, this Court ordered the government to file a responsive brief to Petitioner's § 2255 motion. ECF No. 177. The government timely filed its response, ECF No. 180, and Petitioner thereafter filed a reply brief, ECF No. 181.[1] Accordingly, Petitioner's § 2255 motion is fully briefed and ripe for review.

### D. Additional Motions and Letters

Subsequent to the July 2010 hearing at which Petitioner entered his plea of guilty to Count One of the indictment, the Court received more than forty motions or "letter motions" from

---

[1] Within one year of Petitioner's conviction and sentence becoming final, and prior to the Court ordering a government response to Petitioner's § 2255 motion, Petitioner submitted a "Motion to Amend" his § 2255 motion. ECF No. 173. Such filing, however, did not advance any new grounds for relief, but instead merely presented additional argument in support of the previously advanced claims. Accordingly, the Court denied such motion to the extent it sought to "amend" Petitioner's § 2255 motion, but indicated that such filing would be considered as a "supplemental brief" in support of Petitioner's § 2255 motion. ECF No. 177. Thereafter, but still within one year of his conviction and sentence becoming final, Petitioner filed a motion for leave to supplement his § 2255 motion with additional evidence. ECF No. 192. This Court granted the motion for leave to supplement, the government filed a responsive brief, and Petitioner filed a reply brief and amended reply brief. Accordingly, the instant Opinion and Order squarely addresses the following filings: ECF No. 104 (§ 2255 motion), ECF no. 173 (supplemental brief in support), ECF No. 180 (government response), ECF No. 181 (§ 2255 reply brief), ECF No. 192 (supplement to § 2255 motion), ECF No. 196 (government response to supplement), ECF No. 197 (reply to supplement), and ECF No. 199 (amended reply to supplement). As set forth by separate Order, Petitioner's third attempt to amend his § 2255 motion (ECF No. 210) is denied; however, even if this Court considered such supplemental filing, it would not change the Court's ruling dismissing and denying Petitioner's § 2255 motion in its entirety as such supplement fails to demonstrate constitutionally deficient performance by defense counsel or resulting prejudice.

Petitioner, including repeated motions seeking to withdraw Petitioner's guilty plea, seeking bond, seeking to dismiss all criminal charges, and/or seeking immediate release. Prior to ruling on the instant § 2255 motion, this Court has ruled on the majority of Petitioner's outstanding motions. In addition to such motions, the Court has received approximately forty letters from Petitioner, despite the fact that the Court has informed Petitioner that he should not communicate with the Court via letter. The Court notes that its ruling herein is not in any way influenced by Petitioner's practice of repeatedly filing motions and letters that frequently requested the exact same relief as prior motions that had already been denied. However, the factual and procedural history of this matter is just that, an objective history of what transpired in this case, and it is necessary to at least briefly reference all relevant filings in order to provide a complete background of this case.[2]

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To

---

[2] Notwithstanding Petitioner's numerous assertions to the contrary, the Court bears no ill-will, bias, or any other negative feelings toward Petitioner based on any position he has taken in this case. Although Petitioner was accurate in acknowledging within some of his filings that blanketing the Court with duplicate motions seeking the same relief was ill-advised, Petitioner's decision to pursue such course of action does not in any way impact this Court's resolution of the claims set forth in Petitioner's timely filed § 2255 motion.

obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion." Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" (quoting Davis v. United States, 417 U.S. 333, 343 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp.

9

2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1992). "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim, or a denial of effective assistance of counsel.'" United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting Mikalajunas, 186 F.3d at 493). As for prejudice, it is not enough for a petitioner to demonstrate "a possibility of

prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." Frady, 456 U.S. at 170.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. Mikalajunas, 186 F.3d at 494. Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. Bousley v. United States, 523 U.S. 614, 623-24 (1998); see Pettiford, 612 F.3d at 282 ("To succeed on actual innocence grounds . . . 'a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent.'" (quoting Mikalajunas, 186 F.3d at 494)). A petitioner asserting innocence "as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010); see United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (indicating that ineffective assistance of counsel claims "are normally raised before the district court via 28 U.S.C. § 2255").

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court of the United States has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v.

12

Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). To obtain relief based on an allegation of ineffective assistance a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful,

13

"every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

In conducting a hindsight evaluation of counsel's performance, a court must recognize that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. If defense counsel has made an adequate investigation into the facts and potential lines of defenses, "the strategic choices made as a result will seldom if ever be found wanting." Id. at 681 (internal quotation marks omitted). Accordingly, the difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks"—such strategic decisions must be afforded "'enormous deference.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)).

14

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court applies a slightly modified prejudice standard when a petitioner alleges ineffective assistance associated with the entry of a guilty plea, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

Petitioner's § 2255 motion asserts four grounds for relief. The first challenges the effectiveness of Petitioner's second lawyer, who began representing Petitioner before the entry of his guilty plea and continued his representation through Petitioner's sentencing. Petitioner's second claim asserts that his sentence was constitutionally excessive. The third claim

15

asserts that Petitioner was unconstitutionally deprived of the opportunity to face his accusers. Petitioner's fourth and final claim asserts that his constitutional rights were violated due to governmental misconduct. As set forth in detail below, all of Petitioner's claims are dismissed and denied.

## A. Ineffective Assistance due to Conflict

Petitioner's first claim is best interpreted as arguing that defense counsel provided ineffective assistance as a result of a purported conflict of interest. Petitioner previously asserted, before this Court and before the United States Court of Appeals for the Fourth Circuit, that his guilty plea was involuntary because his lawyer was operating under a conflict of interest due to counsel's representation of another criminal defendant named Anthony Gonzalez ("Gonzalez"). This Court fully investigated such matter and, after a lengthy hearing, concluded that no conflict existed because counsel did not discover the intertwinement of the Gonzalez matter and the instant case until after Petitioner pled guilty, and the cross-over between the cases was so minor in nature that all references to Gonzalez were stricken from Petitioner's Presentence Investigation Report ("PSR"). March 15, 2011 Hearing Tr. 49-60, 63-64, ECF No. 112. The Fourth Circuit affirmed this Court's denial of Petitioner's motion to withdraw his plea agreement based on the purported conflict of interest. Galloway, 471 F. App'x at 140. In

16

affirming this Court's ruling, the Fourth Circuit noted that
this Court's conclusion that "no conflict of interest existed"
was "amply supported by the record." Id.   In addition, the
Fourth Circuit noted that nothing in the supplemental record on
appeal provided a basis for altering the Fourth Circuit's prior
conclusion that Petitioner "knowingly and voluntarily pled
guilty during the [district] court's thorough plea colloquy."
Id. at 141 n.*.

Petitioner's § 2255 motion appears to re-raise the same
conflict argument, but does so through adding a reference to
defense counsel's subsequent representation of a different
criminal defendant (Esco Dickerson), in a case that was heard by
a different judge of this Court.   Petitioner contends that
defense counsel's representation of Gonzalez resulted in a
conflict in both Petitioner's case, and in Esco Dickerson's
case.   Petitioner seeks to use such asserted fact as evidence
that his lawyer is a repeat offender with respect to ignoring
conflicts of interest.   In essence, Petitioner asserts that
because a conflict purportedly arose in the Esco Dickerson case,
it must follow that there was an actual conflict of interest in
the instant case.

First, Petitioner's claim is **DISMISSED** because it has
already been squarely addressed and rejected by this Court, and
the Fourth Circuit on direct appeal, and Petitioner fails to

17

demonstrate any intervening change in law since such rejection. See United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (indicating that because there was not any change in the law warranting reconsideration of claims that were "already addressed and rejected on direct appeal," the district court correctly held that the defendants "cannot relitigate these issues" through asserting them in a § 2255 motion); Bolding v. Evatt, 50 F.3d 5, 1995 WL 110172, at *1 (4th Cir. 1995) (unpublished table opinion) ("[A] federal prisoner moving to vacate a conviction under [§ 2255] may not base a collateral attack on an issue already decided on direct appeal absent an intervening change in the law."); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (agreeing with the district court that the petitioner should "not be allowed to recast, under the guise of collateral attack, questions fully considered by [the Fourth Circuit]").

Second, even if this Court were to reach the merits of the instant claim, it would be rejected because Petitioner fails to demonstrate that counsel was ineffective due to a conflict of interest. This Court thoroughly investigated this precise claim prior to Petitioner's sentencing and concluded that no conflict of interest impacted the plea proceedings and that any possible conflict going forward would be avoided through modifying the

18

PSR.[3]  Notably, the purported conflict did not even come to light until late in the case because Gonzalez was not debriefed by the government until _after_ Petitioner's indictment was returned. Accordingly, such matter could not have had any bearing on defense counsel's advice to Petitioner regarding the decision as to whether he should proceed to trial or enter a plea of guilty.[4]

Furthermore, as demonstrated by the transcript from the March 15, 2011 hearing, defense counsel did not ignore the potential conflict, but instead indicated on the record that counsel believed that he would in fact have a conflict, going forward, if Petitioner's PSR included any information derived from Gonzalez.  March 15, 2011 Hearing Tr. 49.  The government responded to defense counsel's assertion by explaining to the Court that the limited information provided by Gonzalez was only tangentially relevant to Petitioner's sentencing.  Id. at 53. The government therefore indicated that it would instruct the Probation Officer not to rely on such information, and such

---

[3]  Petitioner's § 2255 reply brief acknowledges that this Court previously addressed the conflict issue, but nevertheless asserts that this Court was required to conduct a "Sullivan inquiry." § 2255 Reply Brief 3, ECF No. 181. However, as recognized by the Fourth Circuit on appeal, "[c]ontrary to Galloway's assertion [on appeal], . . . the district court held a lengthy hearing in which it conducted this very [Sullivan] inquiry." Galloway, 471 F. App'x at 140.

[4]  As is well-documented in the record, counsel's advice to his client about the desirability of entering a guilty plea was based on the fact that the government had audio and video evidence of Petitioner selling crack cocaine, including a sale to an undercover DEA agent, and was prepared to present at trial the audio and video, the DEA agent's testimony, and the testimony of numerous cooperating witnesses.

information was ultimately not considered by the Court in determining the appropriate sentence. Id. at 52-53; see Aug. 3, 2011 Sent. Tr. 18, ECF No. 99 (indicating that the government previously conceded that the information in ¶ 27 of the PSR should be deleted). Accordingly, far from being constitutionally deficient, defense counsel's position and argument regarding Gonzalez ultimately benefitted Petitioner by resulting in the removal of incriminating information from Petitioner's PSR.

Moreover, even if the Court assumes that Petitioner demonstrated an "actual conflict" notwithstanding the Gonzalez material being removed from the PSR, "an adverse effect [from such conflict] is not presumed." United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007). Rather, Petitioner "must separately prove that the conflict adversely affected his counsel's performance." United States v. Dehlinger, -- F.3d --, 2014 WL 243412, at *5 (4th Cir. Jan. 23, 2014) (citing Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001) (en banc)). In order to do so, Petitioner must: (1) "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued"; (2) "must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision"; and (3) "must establish that the defense

20

counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens, 240 F.3d at 361. Here, Petitioner has failed to demonstrate that counsel made an unreasonable tactical decision, let alone demonstrate that any such decision was "linked" to the purported conflict of interest. See Dehlinger, 2014 WL 243412 at *6 (indicating that if a reasonable attorney without a conflict would make the same decision as counsel with the conflict, a defendant cannot prove an adverse effect). Accordingly, "even assuming arguendo that an actual conflict of interest existed," Petitioner failed to satisfy the three prongs of the Mickens test. Id.

In light of the above, even if the Court could reach the merits of the instant claim, Petitioner clearly fails to rebut the presumption that his "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Likewise, because the purported conflict had no relation to the evidence/discovery considered by defense counsel prior to advising Petitioner regarding entry of a guilty plea, and had no bearing on sentencing, Petitioner fails to demonstrate that, but for defense counsel's purported conflict, "the result of the proceeding would have been different." Id. at 693-94. Because Petitioner's claim fails to satisfy either prong of Strickland, the Court alternatively **DENIES** such claim on the merits.

## B. Cruel and Unusual Sentence

Petitioner asserts that his sentence was "cruel and unusual" in violation of the Eighth Amendment because it was based on "inaccurate facts." As set forth below, such assertion fails for several reasons.

First, Petitioner failed to litigate such constitutional claim on direct appeal, and it is therefore procedurally defaulted. Frady, 456 U.S. at 167-68; Gov't. Opp'n Memo at 4, ECF No. 180. Although procedural default may be overcome by demonstrating "cause" and "prejudice," Mikalajunas, 186 F.3d at 492-93, here, Petitioner fails to demonstrate either cause for failing to litigate his Eighth Amendment claim on appeal or resulting prejudice, see United States v. Jones, 56 F.3d 62, 1995 WL 321263, at *1 (4th Cir. 1995) (unpublished table opinion) ("Although [the petitioner's] plea agreement prevented him from appealing, this is not sufficient cause for his procedural default.").[5]  Petitioner has likewise failed to

---

[5] Presumably, Petitioner did not appeal all aspects of his conviction and sentence, and instead limited his appeal to challenging this Court's denial of his motion to withdraw his guilty plea, due to the waiver of appellate rights contained within his written plea agreement. Notably, as indicated by the Fourth Circuit in its order denying the government's motion to dismiss Petitioner's appeal, although "Galloway knowingly and voluntarily waived his right to appeal his conviction and sentence, . . . the issue Galloway seeks to raise on appeal—whether the district court properly denied his motion to withdraw his guilty plea based on alleged ineffective assistance of counsel due to a conflict of interest—does not fall within the scope of Galloway's valid waiver of appellate rights." United States v.

demonstrate that a "miscarriage of justice would result from the refusal of the court to entertain" the instant claim on collateral attack. Mikalajunas, 186 F.3d at 494. Accordingly, Petitioner's Eighth Amendment claim is **DISMISSED** as procedurally defaulted.

Second, even if this Court reached the merits of the instant claim, it would be rejected. As highlighted by the government, Petitioner's § 2255 motion fails to even identify which facts in his PSR are "inaccurate," let alone present any evidence, or even argument, in an effort to demonstrate their inaccuracy. Instead, Petitioner's § 2255 motion reasserts the same claim he made at his initial, May 23, 2011 sentencing hearing—that his attorney never reviewed the "revised" PSR with him. As established at such hearing, however, there was not a "revised" PSR to review at the time Petitioner was sentenced, as no substantive changes were made to the PSR Petitioner had reviewed prior to the sentencing hearing. May 23, 2011 Sent. Tr. 6-7, ECF No. 77; see PSR A-1 to A-3, ECF No. 41 (PSR addendum listing no changes to the original PSR, prepared on November 1, 2010, and listing the objections that defense counsel intended to raise at the sentencing hearing).

---

Galloway, No. 11-4640, slip op. at 1-2 (4th Cir. Dec. 13, 2011), ECF No. 35.

Furthermore, as to the factual objections to drug transactions that were raised at sentencing by defense counsel after reviewing the PSR with Petitioner, the Court, in essence, sustained all such objections because the drug transactions referenced in the disputed PSR paragraphs had no impact on the calculation of Petitioner's advisory Guideline range. May 23, 2011 Sent. Tr. 17-19. Petitioner's § 2255 motion fails to demonstrate that any of the remaining facts in the PSR that were actually relied on by the Court are inaccurate. Therefore, Petitioner fails to demonstrate that this Court erred by sentencing him to 240 months imprisonment, a sentence near the low-end of the advisory Guideline range and well within the statutory sentencing range of 10 years to life.[6]

Third, even if this Court assumed that Petitioner is correct that some of the offense conduct listed in the PSR is inaccurate, and even if the Court further assumes that such inaccuracies operated to increase the advisory Guideline range, Petitioner would still fail to demonstrate that his sentence was

---

[6] Petitioner's § 2255 reply brief for the first time asserts that all of the information in the PSR is inaccurate and Petitioner "would like to assert his innocence." § 2255 Reply Brief 3, ECF No. 181. Such unsupported conclusory statement is plainly insufficient to warrant collateral relief as it is both procedurally defaulted and is a blanket denial of all illegal conduct unsupported by any affirmative showing. See Butler v. United States, 173 F. Supp. 2d 489, 498 n.4 (E.D. Va. 2001) ("A defendant who contests information in the presentence report has an affirmative duty to show that the information is inaccurate or unreliable." (citing United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990))).

"cruel and unusual" under the Eighth Amendment. The overwhelming evidence in this case demonstrated that Petitioner participated in a lengthy drug trafficking conspiracy involving substantial amounts of cocaine and cocaine base. The statutory punishment for such offense is a mandatory minimum term of ten years imprisonment and a maximum term of life imprisonment, and Petitioner was sentenced to twenty years imprisonment. Petitioner's prior criminal history, the quantity of drugs involved, the length of the conspiracy, as well as Petitioner's leadership role in the offense, are all aggravating factors warranting a sentence substantially in excess of ten years. Accordingly, even if this Court deemed it proper to perform a "proportionality review" for purposes of analyzing the instant Eighth Amendment claim, it would conclude that Petitioner's twenty year sentence was proportionate to the offense of conviction. See United States v. Hashime, 722 F.3d 572, 573 (4th Cir. 2013) (Gregory, J., concurring) (discussing a circuit split in which the Fourth Circuit minority position only permits proportionality review to be conducted in cases where the sentence is "life imprisonment without the possibility of parole," but noting that even under the majority rule, a "court must only conduct proportionality review in 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross

disproportionality'" (quoting Ewing v. California, 538 U.S. 11, 30 (2003))); United States v. Slott, -- F. App'x --, 2014 WL 57661, at *1 (4th Cir. Jan. 8, 2014) (indicating that "[t]he Eighth Amendment . . . implicitly requires that a criminal sentence be proportionate to the crime or crimes of conviction" and that "[g]enerally, three factors are considered in conducting such a proportionality review: (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions") (internal quotation marks and citations omitted).

For the above stated reasons, even if Petitioner's second claim was not dismissed as procedurally defaulted, it would be **DENIED** on the merits because Petitioner fails to demonstrate that his sentence violates the Eighth Amendment.

### C. Due Process Violations

Petitioner next asserts that his Sixth Amendment rights were violated in that he was denied due process when he was prevented from facing his accusers. As set forth below, such claim is procedurally defaulted and, alternatively, fails on the merits.

Petitioner failed to litigate the instant constitutional claim on direct appeal, and it is therefore procedurally

defaulted. Govt. Opp'n Memo at 4, ECF No. 180; see Jones, 1995
WL 321263, at *1 (indicating that an appeal waiver in a plea
agreement is "not sufficient cause for his procedural default").
Such default can in some circumstances be overcome, such as by
demonstrating "cause" and "prejudice," or by demonstrating that
a "miscarriage of justice would result from the refusal of the
court to entertain the collateral attack." Mikalajunas, 186
F.3d at 492-94. However, here, Petitioner fails to satisfy
either of the above tests, and instead seeks to impermissibly
use his § 2255 motion to do service as a direct appeal. See
Frady, 456 U.S. at 166 (indicating that a § 2255 collateral
challenge "may not do service for an appeal"). Accordingly, the
instant claim is **DISMISSED** as procedurally defaulted.

Alternatively, even if the Court reached the merits of
Petitioner's Sixth Amendment claim it would be denied. As
highlighted in the government's brief, at the time of his guilty
plea, while under oath, Petitioner knowingly and voluntarily
waived several of his constitutional rights, including his right
to confront witnesses against him. Specifically, the following
exchange occurred:

> **Court:** Mr. Galloway, do you understand that you have a
> right to plead not guilty, or if you have previously
> entered a plea of not guilty, that you have a right to
> persist in that plea?
>
> **Petitioner:** Yes, Your Honor.

**Court:** If you plead not guilty, you have a right to a speedy and public trial by jury. At that trial, you have the right to the assistance of an attorney, the <u>right to confront and cross-examine witnesses against you</u>, and you cannot be required to incriminate yourself. Do you understand this?

**Petitioner:** Yes, Your Honor.

. . .

**Court:** And do you understand that if you plead guilty, <u>you're going to waive those trial rights that I've just reviewed with you</u>?

**Petitioner:** Yes, Your Honor.

. . .

**Court:** You have the right to use the power and the process of this court <u>to compel production of any evidence, including the attendance of any witnesses on your behalf</u>, but if the court accepts your guilty plea, <u>you're going to lose that right</u>. Do you understand this, Mr. Galloway?

**Petitioner:** Yes, Sir.

Guilty Plea Tr. 9-10, ECF No. 31 (emphasis added). Because "[c]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," § 2255 claims that contradict prior sworn statements are deemed "patently frivolous or false" except in the case of extraordinary circumstances. <u>United States v. Lemaster</u>, 403 F.3d 216, 221 (4th Cir. 2005); <u>see also</u> <u>Galloway</u>, 471 F. App'x at 141 n.* (referencing the Fourth Circuit's prior conclusion in this case that "Galloway knowingly and voluntarily pled guilty during the [district] court's thorough plea colloquy"). As no

28

extraordinary circumstances exist here, Petitioner's current claim that he was denied (as contrasted with <u>voluntarily waived</u>) the right to face his accusers, is rejected by the Court.

In addition to the above, to the extent Petitioner's habeas claim can be interpreted as arguing that defense counsel was ineffective in the manner in which he handled discovery matters, or argues that Petitioner was otherwise denied access to the evidence against him, such assertions were previously addressed by this Court, in detail, and they were not at that time, nor are they currently, supported by the record. March 15, 2011 Hearing Tr. 26-37. Notably, an agreed discovery order was entered in this case and the government provided Petitioner's original counsel, and his replacement counsel, with discovery materials, including the video surveillance of Petitioner engaging in drug trafficking transactions. Aug. 24, 2010 Hearing Tr. 8-12, 17-18, ECF No. 60. As acknowledged by Petitioner in open court, prior to entering his plea of guilty, Petitioner's lawyer reviewed the government's evidence in the case with Petitioner, including the transcripts of the audio/video surveillance and the video footage itself. Aug. 24, 2010 Hearing Tr. 17-18; March 15, 2011 Hearing Tr. 37. Petitioner's § 2255 motion does nothing more than repeat his prior claims, already once rejected by this Court, that discovery matters were mishandled by defense counsel because

Petitioner never saw his "motion discovery" and/or because his counsel improperly "waived" an evidentiary hearing. Such assertions, without any new facts or argument, fail to alter this Court's prior conclusion that defense counsel provided effective assistance and that Petitioner's claims associated with his lawyer's handling of discovery were based primarily on Petitioner's confusion regarding the discovery process-for example, he thought a deadline for filing written motions was a hearing date. March 15, 2011 Hearing Tr. 26-37.[7]  Furthermore,

---

[7] In addition to the above, Petitioner's supplemental brief in support of his § 2255 motion indicates that Petitioner denies participating in three drug transactions with confidential informant "Leikfer Stanley." § 2255 Suppl. Brief 1, ECF No. 173. Petitioner's § 2255 reply brief likewise states that Petitioner denies knowing or selling drugs to "Leikfer Stanley," and that such issue should have been raised by defense counsel at the "waived" evidentiary hearing. § 2255 Reply Brief 4, ECF No. 181. Petitioner's later filed evidentiary supplement, which included two documents that are already part of the record and a sealed DEA investigation report, likewise contends that Petitioner did not know "Lykeford Stanley." Evidentiary Suppl. 2, ECF No. 192. Such latter submission further contends that the prosecutor assigned to this case committed perjury by stating to the Court that the government had no witness named "Jamal Stanley," whereas DEA agents purportedly informed Petitioner that Jamal Stanley was the person identified as "CW-4" in the "Statement of Facts" entered at the time of Petitioner's guilty plea. Petitioner, however, offers nothing in his § 2255 briefs, or exhibits thereto, that support such claims beyond his own self-serving statements. Petitioner also fails to demonstrate that the disputed drug transactions with Leikfer Stanley, or any purported perjury committed by the government in August of 2010, had any impact on his decision to plead guilty in July of 2010. Petitioner likewise fails to demonstrate any direct impact on his sentence. Accordingly, to the extent such claims allege government misconduct, they are procedurally defaulted and denied on the merits as Petitioner fails to demonstrate that the purported perjury had any impact on his plea or sentence. To the extent such claims allege ineffective assistance of counsel, Petitioner's bald assertions are denied as they are unsupported by any affirmative showing, Butler, 173 F. Supp. 2d at 498, and fail to demonstrate constitutionally deficient performance or resulting prejudice, Strickland, 466 U.S. at 687-88.

Petitioner's current assertion that his lawyer denied him access to discovery materials conflicts with his prior sworn statements indicating that counsel reviewed such materials with him.   The current assertion is therefore rejected as "patently frivolous or false."[8]   Lemaster, 403 F.3d at 221.

For the reasons discussed above, to the extent it is proper for this Court to reach the merits of Petitioner's Sixth Amendment claim, it is **DENIED** on the merits.   Furthermore, to the extent such claim can be interpreted as challenging the effectiveness of counsel, it is **DENIED** as it fails to demonstrate constitutionally deficient performance or resulting prejudice.

### D. Government Misconduct

Petitioner's final claim asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated due to governmental misconduct.   Specifically, Petitioner asserts that the government intentionally and improperly placed two undercover

---

[8] Petitioner also alleges in his reply brief, but not in his § 2255 motion, that his counsel coerced him into pleading guilty through stating that Petitioner had almost no chance of succeeding at trial and that he would face 30 years to life in prison unless he pled guilty.   Such claim, which appears to allege ineffective assistance, is denied on the merits because Petitioner fails to satisfy either prong of Strickland.   Notably, as this Court has already ruled in addressing precisely the same argument, Petitioner fails to establish that his counsel made "threats" or otherwise coerced Petitioner. Rather, defense counsel was merely providing his assessment of the overwhelming evidence of guilt in this case, and counsel's statements regarding the length of the sentence that could result if Petitioner proceeded to trial was a statement of a fact, not a threat.   March 15, 2011 Hearing Tr. 38-40, 67.

informants in the jail where he was housed in an effort to either convince Petitioner to plead guilty or to obtain additional evidence against him. As discussed below, such claim is procedurally defaulted and fails on the merits.

Petitioner failed to litigate such constitutional claim on direct appeal, and it is therefore procedurally defaulted. Govt. Opp'n Memo at 4, ECF No. 180; see Jones, 1995 WL 321263, at *1. As with his previous claims, Petitioner has failed to overcome such default through demonstrating "cause" and "prejudice," and has likewise failed to demonstrate that a "miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Mikalajunas, 186 F.3d at 492-94. Accordingly, the entirety of the instant claim is **DISMISSED** as procedurally defaulted.

Even if this Court were to reach the merits of such claim, it would be denied in its entirety as Petitioner fails to demonstrate that the government engaged in misconduct of any kind. First, as to the alleged placement of Anthony Gonzalez in the jail with Petitioner, this matter was already raised by Petitioner at one of the many hearings this Court conducted in advance of Petitioner's sentencing. March 15, 2011 Hearing Tr. 57-58, 60. After providing Petitioner every opportunity to explain his claims, the Court previously concluded that the government (and defense counsel) engaged in no such misconduct.

32

Id. at 66-67, 69-70.  Now, in his § 2255 motion, Petitioner re-raises the exact same issue without advancing any additional facts.  As Petitioner has advanced nothing more than supposition that the prosecutor engaged in misconduct with respect to Gonzalez, the instant claim fails on the merits.[9]  Furthermore, even assuming arguendo that the government engaged in misconduct, Petitioner fails to demonstrate "that the misconduct induced him to plead guilty." United States v. Fisher, 711 F.3d 460, 467 (4th Cir. 2013).

Similarly, Petitioner's assertion that the government placed Harry West ("West"), another confidential informant, in the same jail housing unit as Petitioner in an effort to either convince Petitioner to plead guilty or to obtain incriminating information also fails on the merits.  Petitioner advances nothing more than supposition that the government "assigned" West the task of convincing Petitioner to plead guilty and/or to gather evidence against him.  Petitioner also fails to present

---

[9] Petitioner's supposition that the prosecutor engaged in misconduct carries over into the many letters and motions Petitioner filed subsequent to his § 2255 motion.  Most tellingly are Petitioner's recent filings asserting that the Assistant United States Attorney that was previously assigned to this case recently lost her job and had been "given the choice to resign or face persecution for her misconduct" in the instant case.  ECF No. 274; see also ECF No. 271. Petitioner alleges that he was recently "informed" of such forced resignation, but fails to even disclose his purported source, let alone provide an affidavit or other evidence from such alleged source. Notably, as far as this Court is aware, the Assistant United States Attorney in question recently retired, voluntarily, after approximately 25 years of service as an AUSA.

any evidence demonstrating that the prosecutors involved in this case, as opposed to the United States Marshals Office, had any input as to the specific jail, or specific housing unit within such jail, that West was assigned to. Additionally, even if the Court assumes that West was actively trying to obtain incriminating information from Petitioner while they were housed together and further assumes that West was debriefed after being housed with Petitioner, Petitioner fails to demonstrate that such activities were orchestrated by the government, as contrasted with being motivated by West's own self-serving desire to further West's level of cooperation in an effort to have his sentence reduced.

In addition to the above, it is notable that the information in the PSR that was purportedly provided by West (who is identified by Petitioner as "CW5" in the PSR), was all <u>historical drug trafficking information</u> involving drug activities in which West was directly involved. Nothing in the PSR reports any type of "confession" made by Petitioner while incarcerated. Furthermore, at Petitioner's second sentencing hearing, he stated that West's attempts to coerce him to plead guilty "failed," Aug. 3, 2011 Sent. Tr. 34, and thus, even if Petitioner's assertions had a basis in fact, he suffered no prejudice from West's efforts to "coerce" him to plead guilty. Notably, as explained by the Fourth Circuit, in order to succeed

34

in demonstrating that a guilty plea was involuntary, "in addition to showing impermissible government conduct, [a] Defendant must show that the misconduct induced him to plead guilty." Fisher, 711 F.3d at 467. Stated differently, to succeed a defendant must demonstrate a "reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial." Id. (internal quotation marks and citation omitted). Furthermore, because courts take "an objective approach to determining reasonable probability," a defendant cannot rely on his own personal motivations, but must instead "show that a reasonable defendant standing in his shoes likely would have altered his decision to plead guilty, had he known about [the government's] misconduct." Id. Here, based on the overwhelming evidence against Petitioner, as explained by the prosecutor and defense counsel, evidence that included drug transactions that were witnessed by an undercover DEA agent and recorded on video, Petitioner is plainly unable to demonstrate that a "reasonable defendant" would have proceeded to trial.[10]

---

[10] As previously discussed herein at footnote 7, to the extent Petitioner's § 2255 evidentiary supplement can be interpreted as permissibly adding a claim asserting governmental misconduct through perjury with respect to "Jamal Stanley" acting as an informant in this case, such claim is dismissed as procedurally defaulted and denied on the merits. Such dismissal and denial is based on the fact that Petitioner: (1) failed to litigate this issue on appeal; (2) failed to make an affirmative showing that Jamal Stanley was a witness in this case, or even that the AUSA knew a Jamal Stanley, and thus failed to

In summary, Petitioner's instant claim not only fails to demonstrate any governmental misconduct, but also fails to demonstrate that Petitioner suffered any prejudice as a result of being housed with Gonzalez and/or West. Accordingly, to the extent it is proper for the Court to consider the instant claim on its merits, it is **DENIED**.

## IV.  CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion is **DISMISSED** in its entirety as Petitioner's first claim for relief was expressly considered and rejected by the Fourth Circuit Court of Appeals, and the remainder of his claims were procedurally defaulted. Alternatively, to the extent it is proper for this Court to consider any of Petitioner's four claims on the merits, each claim is **DENIED** as Petitioner fails to demonstrate that his constitutional rights were violated.

Finding that the procedural basis for dismissal of Petitioner's § 2255 motion is not debatable, and alternatively finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C.

---

prove any knowingly false statements; (3) failed to demonstrate that the AUSA's post-plea purported perjury had any impact on Petitioner's decision to plead guilty; and (4) failed to demonstrate that the alleged perjury had any impact on Petitioner's sentence.

§ 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, to Petitioner's former counsel, and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 12 , 2014